77 F.3d 488
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Teshome ABATE, Plaintiff-Appellant,
v.
Walter WALTON, Defendant-Appellee.
 No. 94-15942.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 13, 1995.*
Decided Jan. 5, 1996.
 
 1
 Before: WIGGINS and LEAVY, Circuit Judges and REAL,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Teshome Abate is a prisoner in custody of the Arizona Department of Corrections ("ADOC") who claims to be a member of the Ethiopian Orthodox Tewahido Church. He asserts that his religion requires him to consume a non-dairy vegetarian diet throughout much of the year, and to fast for forty days on only milk and water during another part of the year. He appeals the order of the district court of Arizona holding that ADOC need not provide him with a special religious diet. We have jurisdiction under 28 U.S.C. § 1291 and affirm.
 
 BACKGROUND
 
 4
 This is the second time that Abate's dietary claims have come before us on appeal in this case.[1] In Abate's previous appeal, this court reversed the district court's finding that Abate was not entitled to a special religious diet because at the time the record showed that the dietary laws of Abate's religion forbid him from consuming dairy products during certain times of the year. Abate v. Walton, No. 92-15613, 1992 WL 355525, at * 1-2 (9th Cir. Dec. 2, 1992). That record was based mainly on Abate's uncontroverted declarations.
 
 
 5
 On remand on February 3, 1993, the district court reinstated an earlier order, requiring Abate to provide the prison with a calendar of the dates on which he could not consume dairy products, and requiring ADOC to: 1) provide Abate with a vegetarian diet of sufficient nutritional value; 2) provide Abate a non-dairy vegetarian diet with sufficient nutrition on the days that he was required to refrain from consuming dairy products; and 3) provide Abate with non-dairy substitutes necessary to provide him with sufficient nutrition during his non-dairy season. CR 115.
 
 
 6
 After entry of the district court's order, Abate began to claim that his religion required him to refrain from eating breakfast on weekdays during certain parts of the year. In addition Abate undertook an annual forty-day fast, during which he would only consume milk and water, to protest abortion, homosexuality, illicit drugs, and the movie "The Last Temptation of Christ." Abate complained that ADOC first served him breakfast when his religion dictated that he was to forego breakfast, and later failed to bring him breakfast on weekends during certain times of the year when his religion only required him to refrain from eating breakfast on weekdays. He also complained that the prison did not provide him with a sufficient supply of milk during his milk and water fast, but at one point, he refused extra milk when it was sent to him.
 
 
 7
 Abate filed a number of motions throughout the balance of 1993, alleging that the prison was not complying with the district court's order and that ADOC was attempting to kill him by serving him spoiled dairy substitute. On March 4, 1994, and April 15, 1994, the district court conducted an evidentiary hearing on the motions for contempt. Evidence was provided by ADOC and Abate regarding Abate's religious beliefs, the difficulties involved in complying with Abate's eating schedule, and the alleged spoiled dairy substitute. On March 15, 1994, ADOC filed a motion to modify the court's order of February 3, 1993, seeking relief from its duty to supply Abate with a special menu.
 
 
 8
 On May 6, 1994, the district court entered its Memorandum of Decision and Order, holding that Abate was never entitled to any judgment in his favor and vacating its February 3, 1993 order. CR 186 at 7-8. "Plaintiff's fasting practices are not religious in nature. Plaintiff's mental illness, specifically his grandiose delusions and ideations, and not the tenets of his religion, are the cause of Plaintiff's having sought his special 'religious' diet that forms the basis of this lawsuit." Id. at 23. The court ordered ADOC to allow Abate to choose from the regular prison menu, a kosher dietary menu, or a vegetarian diet including milk and eggs. Id. at 39. The court determined that if Abate chooses to fast, it would be a "personal choice for which ... [ADOC] ... shall have no responsibility." Id.
 
 DISCUSSION
 I. ADOC'S MOTION FOR RELIEF FROM JUDGMENT
 
 9
 Abate argues that the district court should not have granted ADOC's Motion to Modify because it was not timely under Rule 60(b). Motions for relief from judgment pursuant to Fed.R.Civ.Pro. 60(b) will not be reversed absent an abuse of discretion. Export Group v. Reef Indus., Inc., 54 F.3d 1466, 1469 (9th Cir.1995).
 
 
 10
 Abate's argument is without merit. The district court issued its decision under Rule 60(b)(3), (5), and (6), finding that there was "fraud and/or misrepresentation" on the part of Abate in representing his religious dietary requirements, that the prospective application of its February 3, 1993 order would no longer be appropriate, and that exceptional circumstances justified ADOC's relief from the order.
 
 
 11
 The district court properly relied on subparts (5) and (6) in granting the motion because the strict one-year time limit only applies to subparts (1), (2) and (3) of Rule 60(b). Fed.R.Civ.P. 60(b). Even though there is no time limit for Rule 60(b)(5) or (6) motions, such motions must be brought "within a reasonable time," Fed.R.Civ.P. 60(b), and the court must consider the prejudice to the nonmoving party caused by the delay in such motions, and the reasonableness of that delay. In re Pacific Far East Lines, Inc., 889 F.2d 242, 249 (9th Cir.1989). Because Abate's own motions and changing of his dietary demands eventually led to the evidentiary hearings and the reversal of the district court's previous order, Abate was not prejudiced by ADOC's motion and ADOC had good reason for not bringing its motion earlier. Therefore, the district court properly based its decision on Rules 60(b)(5) and (6).
 
 
 12
 In addition, Rule 60(b) "does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding ..., or to set aside a judgment for fraud upon the court." Id. A court has "inherent power ... to vacate its own judgment upon proof that a fraud has been perpetrated upon the court." Chambers v. Naco, Inc., 501 U.S. 32, 44, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991). Thus, because the district court determined that Abate had misrepresented the dietary requirements of his religion, it was proper for the court to vacate its judgment.
 
 II. ABATE'S MOTIONS FOR CONTEMPT
 
 13
 Abate alleges that the trial court abused its discretion in refusing to find ADOC officials in contempt of its order of February 3, 1993. A district court's civil contempt order is reviewed for an abuse of discretion. Reebok Int'l Ltd. v. McLaughlin, 49 F.3d 1387, 1390 (9th Cir.), cert. denied sub nom., 116 S.Ct. 276 (1995).
 
 
 14
 Civil contempt "consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." In re Dual-Deck Video Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th Cir.1993). The party alleging contempt and seeking a civil remedy must prove it by clear and convincing evidence. Id.
 
 
 15
 Prison officials concede that Abate was inadvertently served spoiled Mocha Mix, but there is absolutely no evidence in the record that Abate was served the Mocha Mix with the intent to kill him, or that he was served food containing sharp metal fragments. Despite Abate's claim that ADOC's later failure to serve him Mocha Mix, a mostly-fat dairy substitute with minimum nutritional value, was in contempt of the district court's order, there is no written order by the district court requiring the prison to serve him Mocha Mix.
 
 
 16
 Furthermore, the district court did not err in finding that ADOC's failure to serve Abate breakfast on Saturday and Sunday during certain parts of the year was a result of Abate's own actions. Abate provided ADOC officials with a letter from his religious leader which stated that during fasting periods "the faithfuls have to have no breakfast at all," and ADOC's dietician relied on this letter in failing to provide Abate with breakfast on Saturday and Sunday.
 
 
 17
 The district court did not abuse its discretion in finding that Abate did not establish by clear and convincing evidence that ADOC officials were in contempt of the district court's order.
 
 III. ABATE'S REQUESTS FOR WITNESSES
 
 18
 Abate argues that the district court abused its discretion by denying his request that certain witnesses appear at the evidentiary hearing. The district court's evidentiary rulings are reviewed for an abuse of discretion and errors will not result in reversal unless prejudice is shown. City of Long Beach v. Standard Oil of California, 46 F.3d 929, 936 (9th Cir.1995).
 
 
 19
 Because Abate's additional witnesses would have been irrelevant or merely cumulative, the district court did not abuse its discretion in refusing to require the appearance of all forty witnesses requested by Abate. Six of the witnesses requested by Abate testified, and they were sufficient to explore fully the issue of Abate's diet.
 
 
 20
 IV. THE DISTRICT COURT'S CREDIBILITY DETERMINATIONS
 
 
 21
 Abate claims that the district court erred in determining that ADOC's witnesses were credible. We accord great deference to district courts' credibility determinations.
 
 
 22
 When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.... [W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.
 
 
 23
 Anderson v. Bessemer City, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985) (citations omitted).
 
 
 24
 Judge McNamee made several specific findings about the credibility of ADOC's witnesses, see, e.g., CR 186 at 22, 25, and Abate's lack of credibility. Id. at 28. He concluded: "While upholding the credibility of the ADOC witnesses, this Memorandum cannot adequately reflect the exasperated facial grimaces and repelling body language of the ADOC witnesses when responding to Mr. Abate's accusatory and misleading interrogation during the evidentiary hearings." Id. at 37-38. Abate's challenges to these credibility determinations consist of mainly his own assertions made before the trial court and in grievances filed with the prison, which are wholly inadequate to satisfy the heightened clearly erroneous standard under which we review credibility determinations.[2]
 
 V. ABATE'S DIETARY CLAIMS
 
 25
 Abate claims that the district court erred in finding that he is not required by his religion to consume a non-dairy vegetarian diet for 188 days out of the year, and that he is not entitled to practice a religiously motivated forty-day fast of only milk and water. We review the relevant questions of law de novo, Twenty-Three Nineteen Creekside, Inc. v. Commissioner, 59 F.3d 130, 131 (9th Cir.1995), and the district court's findings of fact are reviewed under the clearly erroneous standard. Fed.R.Civ.P. 52(a); Exxon Co. v. Sofec, Inc., 54 F.3d 570, 576 (9th Cir.), petition for cert. filed, 64 U.S.L.W. 3070 (Jul. 24, 1995) (No. 95-129).
 
 
 26
 In holding that Abate was not entitled to a special religious diet, the district court erroneously relied on O'Lone v. Estate of Shabazz, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987), finding that ADOC's failure to comply with Abate's specific dietary demands was reasonably related to legitimate penological interests. This was the improper legal standard. In 1993, Congress passed the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb-200bb-4, which states in relevant part:
 
 
 27
 (a) In general. Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b).
 
 
 28
 (b) Exception. Government may substantially burden a person's exercises of religion only if it demonstrates that application of the burden to the person--
 
 
 29
 (1) is in furtherance of a compelling governmental interest; and
 
 
 30
 (2) is the least restrictive means of furthering that compelling government interest.
 
 
 31
 42 U.S.C. § 2000bb-1. "[I]t is clear that the RFRA applies to prisoners' claims." Bryant v. Gomez, 46 F.3d 948, 949 (9th Cir.1995). Thus, the district court was in error insofar as it determined that if Abate's desired non-dairy vegetarian diet was religiously required then the O'Lone "legitimate penological interest" test applied. CR 186 at 32-36.
 
 
 32
 However, because Abate did not prove that the regular menus provided by ADOC provided a "substantial burden" upon his religion, the protections afforded to religious adherents by the RFRA do not aid him. To demonstrate a "substantial burden" to his religion, Abate was required to "show that the activities which he wishes to engage in are mandated," by his religion. Bryant, 46 F.3d at 949.[3]
 
 
 33
 The record reflects significant doubts about the consistency and sincerity of Abate's dietary demands, and ADOC introduced substantial evidence that Abate's non-dairy vegetarian diet would not be required of a sincere incarcerated adherent to the doctrines of the Ethiopian Tewahido Church. His mental illness, though disputed by Abate, is a real and substantial factor in his dietary demands. Thus, the district court's finding that Abate's religion did not require him to consume a non-dairy vegetarian diet was not clearly erroneous.
 
 
 34
 The district court also correctly found that Abate's forty-day milk and water fast is not mandated by his religion. Abate states in his opening brief: "This additional 40 days special fasting is set up by appellant, and dedicated for spiritual [warrior] against inhuman practice of abortion law, blasphem[ous] movie ["The Last Temptation of Christ,"] and illicit drugs." Appellant's Opening Br. at 6-7 (emphasis added). Abate admits elsewhere that the milk and water fast is self-created. See id. at 47; Reply Br. at 49. Because the milk and water fast is not a practice that his faith "mandates," the RFRA does not compel ADOC to provide the diet for Abate.
 
 
 35
 In sum, the district court did not err in finding that Abate is not entitled to any special religious diet under the RFRA or the First Amendment.
 
 VI. ABATE'S RECUSAL MOTION
 
 36
 Abate alleges that Judge McNamee exhibited bias and prejudice during the evidentiary hearing and in his rulings. A denial of a recusal motion is reviewed for an abuse of discretion. Moideen v. Gillespie, 55 F.3d 1478, 1482 (9th Cir.1995).
 
 
 37
 Abate's accusations of bias are based entirely on Judge McNamee's judicial rulings. "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky v. U.S., 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994). The transcript of the evidentiary hearing reveals no such "deep seated favoritism or antagonism." In fact, the transcript demonstrates almost heroic patience and fairness on the part of Judge McNamee. Abate's claims of bias and prejudice are wholly without merit.
 
 CONCLUSION
 
 38
 Based on the foregoing, we AFFIRM the district court's granting of ADOC's Motion to Amend and denial of Abate's contempt and recusal motions.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 Hon. Manuel L. Real, United States District Judge for the Central District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Abate's dietary claims, inter alia, are also before this panel in Abate v. Lewis, No. 94-16335
 
 
 [2]
 Abate has attempted for the first time on appeal to introduce a significant amount of "evidence" to support his allegations against ADOC and its officials. "Documents or facts not presented to the district court are not part of the record on appeal." U.S. v. Elias, 921 F.2d 870, 874 (9th Cir.1990)
 
 
 [3]
 While the ultimate question of whether the prison regulations violate Abate's religious rights is a mixed question of law and fact subject to de novo review, Friedman v. State of Ariz., 912 F.2d 328, 331 (9th Cir.1990), cert. denied sub nom., 498 U.S. 1100, 111 S.Ct. 996, 112 L.Ed.2d 1079 (1991), the narrower question of whether Abate's religion requires him to practice a particular diet is a question of fact, subject to the clearly erroneous standard. See Northwest Indian Cemetery Protective Ass'n v. Peterson, 764 F.2d 581, 585-86 (9th Cir.1985) (whether intrusion on Indian land was destructive to core of Indian beliefs reviewed under clearly erroneous standard), rev'd on other grounds sub nom. Lyng v. Northwest Indian Cemetery Protective Ass'n, 485 U.S. 439, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988)